UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EASOM AUTOMATION, INC.,

    Plaintiff,

vs.
                                      Case No. 06-14553
                                      Honorable Denise Page Hood

THYSSENKRUPP FABCO, CORP.,

    Defendant.

_____/

## ORDER DENYING DEFENDANT'S MOTION TO DISMISS
## ON GROUNDS OF *FORUM NON CONVENIENS*

**I.    INTRODUCTION**

This matter is before the Court on Defendant's Motion to Dismiss on Grounds of *Forum Non Conveniens*, filed on December 4, 2006. Plaintiff filed a Response to Defendant's Motion to Dismiss on December 29, 2006.

On October 17, 2006, Plaintiff, Easom Automation Systems, Inc. (Easom), filed the instant action pursuant to 28 U.S.C. § 1332 alleging the following against Defendant ThyssenKrupp Fabco, Corporation (Fabco): Count I, Breach of Contract; Count II, Breach of Implied Contract; Count III, Unjust Enrichment; Count IV, Enforcement of Michigan Special Tool Lien Act.

**II.    STATEMENT OF FACTS**

Plaintiff Easom is a Michigan Corporation with its principal place of business in Madison

1

Heights, Michigan. (Pl.'s Compl., ¶ 1) Plaintiff designs, builds, integrates and installs automation equipment and systems for the auto industry.(Pl.'s Compl., ¶ 5) Defendant Fabco, is a Nova Scotia Corporation headquartered in Ontario, and it is in the business of supplying medium and heavy metal stampings and systems to automotive customers. (Def.'s Mot. to Dismiss, p. 1, 2) The present matter arises out of an "agreement" between the parties where Plaintiff was to design, fabricate and install the Sport Bar Assembly System (SBA)[1] for Defendant.

Plaintiff asserts that on July 19, 2005, it issued a Quote to Defendant for the SBA, which specified a price of $5,400,000.00 and a delivery date of March 30, 2006. (Pl.'s Compl., ¶ 10-12) Based upon this Quote, Defendant instructed Plaintiff to commence work on the SBA. (Pl.'s Compl., ¶ 13,14) Plaintiff commenced work on the SBA. According to Plaintiff, Defendant issued a written purchase order on August 30, 2005, which included the following forum selection clause:

> 25. <u>Jurisdiction/Governing law.</u> The contract created by Seller's acceptance of Buyer's offer as set out in Paragraph 3 hereof shall be deemed in all respects to be a contract made under, and shall for all purposes be governed by and construed in accordance, with, the laws of the Province where the registered head office of Buyer is located and the laws of Canada applicable therein. Any legal action or proceeding with respect to such contract may be brought in the courts of the Province where the registered head office of buyer is located and the parties hereto attorn to the non-exclusive jurisdiction of the aforesaid courts.

(Def.'s Mot. to Dismiss, Ex. B, ¶ 25) Between August and October 2005, during the design and engineering phase of the SBA, Plaintiff asserts that Defendant's representatives regularly met

---

[1] The Sport Bar Assembly System is a special machine used by Defendant to fabricate roll bars for DaimlerChrysler Corporation's JK Platform, the 2007 Jeep Wrangler. (Pl.'s Compl., ¶ 8, Def.'s Mot. to Dismiss)

2

for weekly meetings at Plaintiff's Madison Heights facility. (Pl.'s Resp. to Mot. to Dismiss)

Plaintiff alleges that on October 21, 2005, Defendant's Vice-President, Gary Herman, instructed Plaintiff to begin delivery of the SBA in an "as is" condition by December 31, 2005, with the remainder of the installation to occur on Defendant's facility floor in Dresden, Ontario. (Pl.'s Compl., ¶ 18) Plaintiff permanently affixed its name and address to the SBA's component parts before shipment. (Pl.'s Resp. to Def.'s Mot. to Dismiss, p. 5) Plaintiff began to ship the SBA in an "as is" condition on December 31, 2005. (Pl.'s Compl., ¶ 21) Plaintiff further alleges that it agreed to deliver the SBA on this expedited basis because of Defendant's agreements to do certain things to assist in the expedited installation of the SBA. (Pl.'s Compl., ¶ 23) Plaintiff asserts that Defendant failed to follow through on these agreements. Plaintiff's employees worked on the installation, and testing of the SBA at Defendant's facility. (Pl.'s Compl, 22)

On March 9, 2006, Plaintiff filed a Financing Statement with the Ontario Ministry of Consumer and Industry Services. (Pl.'s Resp. to Def.'s Mot. to Dismiss, Ex. 1) On November 4, 2006, after this suit was already filed, Defendant filed an Application in the Ontario Superior Court of Justice seeking discharge of Plaintiff's financing statement. Plaintiff also alleges that Defendant has failed to pay Plaintiff $1,484,498.05, plus interest, while Defendant continues to operate the SBA. (Pl.'s Compl., ¶ 26)[2]

## III. APPLICABLE LAW & ANALYSIS

"A prerequisite to the application of forum non conveniens is the existence of an

---

[2] Defendant asserts that neither Plaintiff nor Defendant have been able to get the SBA to perform at the specifications agreed upon by the parties, nor does it meet the requirements of DamilerChrysler Corporation's final Production Part Approval Process (PPAP). (Def.'s Mot. to Dismiss, Ex. C)

adequate alternative forum." *Penwest Dev. Corp. v. Dow Chemical Co.*, 667 F. Supp. 436, 438 (E. D. Mich. 1987)(citing *Gulf Oil Co. v. Gilbert*, 330 U.S. 501, 506-07 (1947)). This prerequisite will not be satisfied if the alternative forum's remedy is "so clearly inadequate or unsatisfactory that it is no remedy at all . . . ." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 (1981).

If there is an adequate alternative forum, the district court must then engage in an analysis of the public and private interest factors outlined in *Gilbert*. *Penwest*, 667 F. Supp. at 439. The private interest factors include: 1) private interests of the litigants; 2) ease of access to sources of proof; 3) availability of witnesses; 4) need for a view of the premises if applicable and 5) all other practical considerations that make a trial "easy, expeditious and inexpensive." *Gilbert*, 330 U.S. at 508. The public interest factors include: 1) court docket congestion; 2) burden on the community if no connection with the case; 3) local interest in having localized controversies decided at home; and the court's familiarity with governing law." *Penwest*, 667 F. Supp. 2d at 439. The Sixth Circuit has stated "that no one factor is determinative . . . ." *Stewart v. Dow Chemical Co.*, 865 F. 2d 103, 105 (6th Cir. 1989).

Additionally, the Supreme Court has indicated that a plaintiff's choice of forum is entitled to substantial deference if it is the plaintiff's home forum. *Koster v. (American) Lumbermens Mut. Casualty Co.*, 330 U.S. 518, 524 (1947). The Sixth Circuit has stated that "[a] plaintiff who is a United States citizen should not be deprived of his choice of forum except when the trial would prove oppressive and vexatious to defendant, out of all proportion to the convenience to plaintiff, or when it would be inappropriate because of administrative or legal problems to the court. *Gould, Inc. v. Pechiney Ugine Kuhlman & Trefimetaux*, 853 F. 2d 445,

454 (6th Cir. 1988) (citing *Koster*, 330 U.S. at 524)). As such, Defendant must demonstrate "that the balance of hardships presented by litigating in the forum weighs strongly in favor of dismissal or transfer." *G.M.C. v. Ignacio Lopez de Arriortua*, 948 F. Supp. 656, 668 (E.D. Mich. 1996).

Defendant argues that this case should be dismissed based upon forum non conveniens because: 1) the Ontario Superior Court is an adequate alternative forum; 2) all of the operative facts occurred in Ontario; 3) the "agreement" at issue is governed by Ontario law and this Court will be required to interpret and apply Ontario law; 4) all of the evidence, including the SBA system and witnesses[3], is located in Ontario; 5) inconsistent results may occur as a result of the pending litigation in Ontario.

The Court finds that Defendant has failed to demonstrate that the "balance of hardships" or that trial of this matter in this Court would be "oppressive and vexatious" to Defendant such that dismissal of this action is warranted.[4] First as to the private factors, Plaintiff argues that all of the operative facts did not occur in Ontario, and that Defendant is mistaken when it asserts that all of the Ontario witnesses are beyond the reach of this Court.[5] Plaintiff asserts that the vast

---

[3] Defendant also argues that many of the witnesses are beyond the compulsory subpoena power of this Court. Plaintiff counters that all of Defendant's employees that may be called to testify are party witnesses, as such compulsory process is unnecessary.

[4] Plaintiff argues that the Ontario Superior Court is an inadequate forum because the action in that matter relates to the discharge of Plaintiff's lien on the SBA only, and does not involve any of the claims asserted by Plaintiff in the present matter.

[5] Plaintiff argues that at least two of Defendant's key witnesses, John Bayshore, President and CEO, and Richard Colleta, CFO of Defendant's company, reside in Michigan. Defendants argue that Mr. Bayshore and Mr. Colleta are no longer employed with Defendant. Plaintiff counters that notwithstanding this fact, both men were integral to the formation of the SBA project, and also authorized purchase orders and payments for the project.

majority of the SBA was designed and manufactured at Plaintiff's Madison Heights, Michigan facility. Plaintiff also argues that other representatives of Defendant attended and participated in weekly meetings at Plaintiff's facility during the design phase of the SBA. Further, other key witnesses to the resolution of this matter, such as those employed with DaimlerChrysler, reside in Michigan. As such, Plaintiff is not the only connection to Michigan as Defendant argues. Plaintiff also argues that the fact that the SBA is located in Dresden, Ontario is not an impediment to the efficient resolution of this matter as expert witnesses may be called upon to investigate and testify as to the SBA's operation. Plaintiff asserts that since Dresden, Ontario is a mere 70 miles from this Court, there will be no inconvenience to the parties to secure expert witnesses to conduct investigations of the SBA. Plaintiff also argues that since Defendant has filed two lawsuits in this Court in the last two years, this negates any contention by Defendant that this Court is an inconvenient forum.

As to the public interest factors, to determine the law that governs this action, it must be noted that district courts sitting in diversity must apply the choice of law rules of the state in which the court sits. *International Insurance Co. v. Stonewall Insurance Co.*, 86 F. 3d 601, 604 (6th Cir. 1996). Defendant argues that due to the Forum Selection Clause, this action is governed by Ontario law. Plaintiff argues that Ontario law does not govern this action. Plaintiff asserts that the Convention on Contracts for the International Sale of Goods (CISG) governs the parties' agreement, which applies to "contracts for the sale of goods between parties whose places of business are in different States when the States are contracting States." CISG Art. 1. Plaintiff further argues that the Forum Selection Clause is not part of the parties' agreement under the CISG, as the contract was formed when Defendant assented to the terms and

6

conditions of Plaintiff's quote when it instructed Plaintiff to commence work on the SBA. As such, the terms and conditions of Defendant's purchase orders, sent months after Plaintiff commenced work on the SBA, are not part of the parties' agreement.

Plaintiff also asserts that since the Michigan Special Tools Lien Act, MICH. COMP. LAWS § 570.541 *et seq.*, applies to this cause of action, trial of this matter in this Court is appropriate as this Court will be required to apply Michigan statutory law. The Court will not further engage in the choice of law analysis, as it is not dispositive to the resolution of this matter. Even if Ontario law is found to apply, the Sixth Circuit has noted that "it is not uncommon for U.S. courts to hear cases in which foreign law is applied." *Gutierrez v. Diana Inv. Corp.*, 946 F. 2d 455, 456 n. 3 (6th Cir. 1992).

Defendant also asserts that this case should be dismissed because of the ongoing litigation in Ontario and if this Court retains this matter, inconsistent results could occur. Plaintiff counters that the action in the Ontario Superior Court has been stayed. As such, the pending litigation in Ontario is not a determinative factor in this Court's decision.

Further, this Court finds that Michigan has an interest in having this matter litigated in this Court. The Michigan Special Tools Lien Act, MICH. COMP. LAWS § 570.541 *et seq.* was enacted to ensure that special tool manufacturers receive payment for manufacturing Special Tools once they had been delivered and were no longer in the manufacturers possession. Michigan has a strong interest in seeing that its manufacturers get compensated for their work.

Lastly, this Court's docket is not overburdened, and there is no undue burden on the community as Plaintiff is a Michigan corporation, with its principal place of business in Madison

Heights, Michigan. *See Penwest*, 667 F. Supp. at 441.[6]

IV. **CONCLUSION**

IT IS ORDERED that Defendant's Motion to Dismiss on Grounds of *Forum Non Conveniens* [**Docket No. 4, filed December 4, 2006**] is DENIED.

        /s/    Denise Page Hood
DENISE PAGE HOOD
United States District Judge

Dated: August 1, 2007

I hereby certify that a copy of the foregoing document was served upon counsel of record on August 1, 2007, by electronic and/or ordinary mail.

        S/William F. Lewis
Case Manager

---

[6] The Court notes that at the hearing on this matter, Defendant supplied the Court with the following legal authority to support the present motion: *Gutierrez v. Tropic International Ltd.*, 2002 CanLII 45017 (ON C.A.). The Court finds this to be unpersuasive as to the issue of *Forum Non Conveniens*.