# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

**EASOM AUTOMATION SYSTEMS, INC.,**

    **Plaintiff,**

vs.

Case No. 06-14553
Honorable Denise Page Hood

**THYSSENKRUPP FABCO, CORP.,**

    **Defendant.**

_____/

## ORDER DENYING PLAINTIFF'S MOTION FOR IMMEDIATE POSSESSION

### I.    INTRODUCTION

This matter is before the Court on Plaintiff Easom Automation Systems, Inc.'s Motion for Immediate Possession, filed on January 30, 2007. Defendant ThyssenKrupp Fabco, Corp. filed its Response to Plaintiff's Motion for Immediate Possession on March 2, 2007.

On October 17, 2006, Plaintiff filed the instant action pursuant to 28 U.S.C. § 1332 alleging the following against Defendant: Count I, Breach of Contract; Count II, Breach of Implied Contract; Count III, Unjust Enrichment; and Count IV, Enforcement of Michigan Special Tool Lien.

### II.    STATEMENT OF FACTS

Plaintiff is a Michigan Corporation with its principal place of business in Madison Heights, Michigan. (Pl.'s Compl., ¶ 1) Plaintiff designs, builds, integrates and installs automation equipment and systems for the auto industry. (Pl.'s Compl., ¶ 5) Defendant is a Nova Scotia Corporation headquartered in Ontario, and it is in the business of supplying medium and heavy metal stampings and systems to automotive customers. (Def.'s Mot. to Dismiss, p. 1, 2) The present matter arises out of an "agreement" between the parties where Plaintiff was to design, fabricate and install the

Sport Bar Assembly System (SBA)[1] for Defendant.

Plaintiff asserts that on July 19, 2005, it issued a Quote to Defendant for the SBA, which specified a price of $5,400,000.00 and a delivery date of March 30, 2006.[2] (Pl.'s Compl., ¶ 10-12) According to Plaintiff, that same day, Defendant orally instructed Plaintiff to commence work on the SBA. (Pl.'s Compl., ¶ 13,14) Plaintiff commenced work on the SBA. Plaintiff asserts that Defendant issued a written purchase order on August 30, 2005, which included the following choice of law/forum selection clause:

> 25. <u>Jurisdiction/Governing law.</u> The contract created by Seller's acceptance of Buyer's offer as set out in Paragraph 3 hereof shall be deemed in all respects to be a contract made under, and shall for all purposes be governed by and construed in accordance, with, the laws of the Province where the registered

---

[1] The Sport Bar Assembly System is a special machine used by Defendant to fabricate roll bars for DaimlerChrysler Corporation's JK Platform, the 2007 Jeep Wrangler. (Pl.'s Compl., ¶ 8, Def.'s Mot. to Dismiss)

[2] This quote also contained the following provision:

**AGREEMENT OF SALE**

Any terms and provisions of buyer's orders which are inconsistent with, additional or different from the terms and provisions of this order acknowledgment are rejected, will not be binding on the seller nor considered applicable to the sale or shipment referred to herein. Unless buyer shall notify seller in writing within fifteen (15) days after receipt of this order acknowledgment by buyer, acceptance of the terms and conditions hereof by buyer shall be indicated, and in the absence of such notification, the sale and shipment by the seller of the products covered hereby shall be conclusively deemed to be subject to the terms and conditions hereof. No waiver, alteration, or modification of the provisions hereof shall be binding on the seller unless agreed to in writing by a duly authorized official of seller at its headquarters office(s) . . . .

(*See* Pl.'s Resp. to Defendant's Mot. to Dismiss, Pl.'s Ex. 2)

> head office of Buyer is located and the laws of Canada applicable therein. Any legal action or proceeding with respect to such contract may be brought in the courts of the Province where the registered head office of buyer is located and the parties hereto attorn to the non-exclusive jurisdiction of the aforesaid courts.

(Def.'s Mot. to Dismiss, Ex. B, ¶ 25) Between August and October 2005, during the design and engineering phase of the SBA, Plaintiff asserts that Defendant's representatives regularly met for weekly meetings at Plaintiff's Madison Heights facility. (Pl.'s Resp. to Mot. to Dismiss)

Plaintiff alleges that on October 21, 2005, Defendant's Vice-President, Gary Herman, instructed Plaintiff to begin delivery of the SBA in an "as is" condition by December 31, 2005, with the remainder of the installation to occur on Defendant's facility floor in Dresden, Ontario. (Pl.'s Compl., ¶ 18) Plaintiff permanently affixed its name and address to the SBA's component parts before shipment. (Pl.'s Resp. to Def.'s Mot. to Dismiss, p. 5) Plaintiff began to ship the SBA in an "as is" condition on December 31, 2005. (Pl.'s Compl., ¶ 21) Plaintiff further alleges that it agreed to deliver the SBA on this expedited basis because of Defendant's agreements to do certain things to assist in the expedited installation of the SBA. (Pl.'s Compl., ¶ 23) Plaintiff asserts that Defendant failed to follow through on these agreements. Plaintiff's employees worked on the installation, and testing of the SBA at Defendant's facility. (Pl.'s Compl, 22)

On March 9, 2006, Plaintiff filed a Financing Statement with the Ontario Ministry of Consumer and Industry Services. (Pl.'s Resp. to Def.'s Mot. to Dismiss, Ex. 1) On November 4, 2006, after this suit was already filed, Defendant filed an Application in the Ontario Superior Court of Justice seeking discharge of Plaintiff's financing statement. Plaintiff also alleges that Defendant has failed to pay Plaintiff $1,484,498.05, plus interest, while Defendant continues to operate the

SBA. (Pl.'s Compl., ¶ 26)[3]

## III. PROCEDURAL POSTURE

On December 29, 2006, Defendant filed a Motion to Dismiss on Grounds of *Forum Non Conveniens*, asserting, among other things, that the Choice of Law/Forum Selection Clause governs the agreement between the parties. On August 1, 2007, this Court denied Defendant's Motions to Dismiss on Grounds of *Forum Non Conveniens,* holding, without definitively answering the question of what law governs this action, that Defendant's failure to demonstrate that the "balance of hardships" or trial of this matter in this Court would be "oppressive and vexatious" to Defendant.

## IV. APPLICABLE LAW & ANALYSIS

Plaintiff argues that pursuant to Michigan's Special Tools Lien Act, MICH. COMP. LAWS § 570.563 *et seq*., it is entitled to immediate possession of the SBA, currently in Defendant's possession in Canada. Plaintiff asserts that because it complied with the requirements of the Act to perfect the lien on the SBA, specifically affixed its name and address to the SBA, filed a financing statement with the Province of Ontario, sent notification and a demand for payment letter to Defendant, and waited ninety days without receiving payment, Plaintiff is entitled to immediate possession of the SBA.

Defendant's argument mainly rests upon the assumption that the purchase orders it issued to Plaintiff constituted Defendant's offer, not the quote issued by Plaintiff. By accepting Defendant's offer to build the SBA pursuant to the terms and conditions set forth in the purchase

---

[3] Defendant asserts that neither Plaintiff nor Defendant have been able to get the SBA to perform at the specifications agreed upon by the parties, nor does it meet the requirements of DaimlerChrysler Corporation's final Production Part Approval Process (PPAP). (Def.'s Mot. to Dismiss, Ex. C)

4

orders, specifically the Choice of Law/Forum Selection Clause, Defendant claims Plaintiff agreed the contract was governed by Ontario law. Defendant argues that since the parties expressly agreed that Ontario law would govern their agreement, the Michigan Special Tools Lien Act is inapplicable, and Plaintiff has no right to immediate possession. Alternatively, Defendant argues that if the Act does apply to this action, Plaintiff expressly waived its right to enforce the lien, and, in any event, Plaintiff did not comply with the financing statement filing requirements, as such, the lien is invalid.

It is Plaintiff's contention that the United Nations Convention on Contracts for the International Sale of Goods, or the CISG, May 1980, S. Treaty. No. 9, 98th Cong., 1st Sess. 22 (1983), 19 I.L.M. 671 (reprinted at U.S.C.S. Int.'l Sale Goods) controls this matter based upon the fact that on July 19, 2005, Plaintiff sent Defendant a series of quotes, which constitutes Plaintiff's offer to manufacture and assemble the SBA. (*See* Pl.'s Resp. to Defendant's Mot. to Dismiss, Pl.'s Ex. 2) According to Plaintiff, Defendant verbally accepted this offer on July 19, 2005 (the very same day), and Plaintiff began work on the SBA shortly thereafter.

The CISG governs only the formation of the contract of sale, and the rights and obligations of the seller and the buyer arising from such a contract. *See* CISG, Art. 4. The CISG governs contracts for the sale of goods between parties whose places of business are in different nations, if the nations are Contracting States, unless the subject contract contains a choice-of-law provision. See CISG, Art. 1, 6; *See also American Biophysics Corp. v. DuBois Marine Specialities*, 411 F. Supp. 2d 61, 63-64 (D.R.I. 2006); *See also BP Oil Int'l, Ltd. v. Empresa Estatal Petroleos de Ecuador*, 332 F. 3d 333, 337 (5th Cir. 2003). Both the United States and Canada are signatory nations.

Under the CISG, the July 19, 2005 quote issued by Plaintiff could constitute Plaintiff's offer because the quote was "sufficiently definite and indicate[d] the intention of the offeror to be bound in case of acceptance." *See* CISG, Art. 14. Article 14 indicates that "[a] proposal is sufficiently definite if it indicates the goods and expressly or implicitly fixes or makes provisions for determining the quantity and the price." *Id.* Plaintiff's quote specifically indicates that Plaintiff would design and build the SBA in the amount of $5,400,000.00.

Defendant's oral acceptance of the quote is recognized as a valid form of acceptance under the CISG. *See* CISG, Art. 18. The CISG specifically states that "[a] statement made by or other conduct of the offerree indicating assent to an offer is acceptance." *See* CISG, Art. 18(1). Additionally, "[a]n acceptance of an offer becomes effective at the moment the indication of assent reaches the offeror. . . . ." *See* CISG, Art. 18(2).

The CISG makes provision for the parties to a contract to opt out of the CISG as the governing law and agree that their contract be governed by another law. *See* CISG, Art. 6. "The parties may exclude the application of this Convention, or . . . derogate from or vary the effect of any of its provisions." CISG, Art. 6. Courts that have reviewed this provision have held that the parties must expressly opt out of applying the CISG to their agreement. *See BP Oil Int'l*, 332 F. 3d at 337; *Asante Techs., Inc. v. PMC-Sierra, Inc*., 164 F. Supp. 2d 1142, 1150 (N.D. Cal. 2001) ("A signatory's assent to the CISG necessarily incorporates the treaty as part of that nation's domestic law."); *See also Ajax Tools Works, Inc. v. Can-Eng Manu. Ltd.*, 2003 U.S. Dist. LEXIS 1306, at *8 (holding that since Germany is a contracting state, "the CISG is an integral part of German law. Where parties designate a choice of law clause in their contract, selecting the law of a contracting state without expressly excluding application of the CISG – German courts uphold application of

6

the Convention as the law of the designated Contracting state. To hold otherwise would undermine the objectives of the Convention which Germany has agreed to uphold").

Under either the Plaintiff's quote or Defendant's purchase orders, the CISG applies as neither the quote nor the purchase orders expressly indicated that the CISG did not apply. Further, stating that the law of Canada applied to the agreement indicates that the CISG applied as well, as the Convention is the law of Canada.

The CISG governs only the formation of the contract of sale, and the rights and obligations of the seller and the buyer arising from such a contract. As such, if the Plaintiff's quote constitutes the contract in this case, as opposed to Defendant's purchase orders, the Michigan Special Tools Lien Act may apply to the parties' agreement.

If Defendant's purchase orders govern, Plaintiff has no right to immediate possession because the purchase orders contain a waiver of liens provision. Specifically, the purchase orders contain the following language: "Seller hereby waives all mechanic liens and claims and agrees that none shall be filed or maintained against Buyer or the Product on account of any Product stored by or on behalf of Seller . . . ." (*See* Def.'s Resp. to Pl.'s Mot. for Immediate Possession, Ex. 8, ¶ 18)

Even if the Special Tools Lien Act applies, Defendant argues that Plaintiff failed to file its financing statement with Michigan's Secretary of State as the Act requires. *See* Mich. Comp. Laws §§ 440.9501 and 9502. Plaintiff instead filed its financing statement with the Ontario Ministry of Consumer and Business Services. As such, the lien is invalid. In support of this argument, Defendant cites MICH. COMP. LAWS §§ 440.9501 and 9502. MICH. COMP. LAWS § 440.9501(1) states that:

> Except as otherwise provided in subsection (2), the office in which to file a financing

statement to perfect the security interest or agricultural lien is 1 of the following:

> (a) The office designated for the filing or recording of a record of a mortgage on the related real property, if the collateral is as-extracted collateral or timber to be cut, or the financing statement is filed as a fixture filing and the collateral is goods that are or are to become fixtures.
> (b) The *office of secretary of state* in all other cases, including a case in which the collateral is goods that are or are to become fixtures and the financing statement is not filed as a fixture filing.
> (2) The office in which to file a financing statement to perfect a security interest in collateral, including fixtures, of a transmitting utility *is the office of the secretary of state*. The financing statement also constitutes a fixture filing as to the collateral indicated in the financing statement which is or is to become fixtures.

MICH. COMP. LAWS § 440.9501(1) (italics added).

At this juncture, there remain issues of fact as to which document constitutes the contract in this case--the quotes prepared by Plaintiff or the purchase orders prepared by Defendant. Until this issue is resolved, the Court is unable to determine whether Michigan law applies and whether the Michigan's Special Tools Lien Act applies. Plaintiff is correct that under M.C.L.A. § 570.567(a), a special tool builder may take possession without judicial process if it can be done without breach of the peace. However, Plaintiff has not chosen this alternative since Plaintiff involved the judiciary by filing the instant action in this Court.[4]

---

[4] Plaintiff submits the opinion written by the Oakland County Circuit Court but the Court is not bound by the opinion. In any event, since questions of fact remain regarding what document governs the parties in this case, the Court need not address whether Plaintiff is entitled to "immediate" possession of the SBA.

## V. CONCLUSION

For the reasons set forth above,

IT IS ORDERED that Plaintiff Easom Automation System, Inc.'s Motion for Immediate Possession [**Docket No. 11, filed on January 30, 2007**] is DENIED without prejudice.

s/ DENISE PAGE HOOD
DENISE PAGE HOOD
United States District Judge

Dated: September 28, 2007

I hereby certify that a copy of the foregoing document was served upon counsel of record on September 28, 2007, by electronic and/or ordinary mail.

S/William F. Lewis
Case Manager